UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| CARL H. KIRK, | ) | |
|                Plaintiff, | ) | |
|     vs. | ) | No. 1:05-cv-1681-SEB-TAB |
| OFFICER HENRY C. GREGORY, et al., | ) | |
|                Defendants. | ) | |

**Entry Discussing Motion for Summary Judgment**

This cause is before the court on the defendants' motion for summary judgment, and on the evidentiary record pertaining to the motion for summary judgment.

For the reasons explained in this Entry, the motion for summary judgment must be **granted.**

**I. Background**

**A. Parties, Claims and Procedural Posture**

As used in this Entry, "Kirk" refers to the plaintiff, Carl Kirk, and "defendants" refers to Henry Gregory and Robert Williams. The defendants are police officers.

The plaintiff filed his complaint on November 9, 2005, and supplemented his complaint through his filing of February 21, 2006. Certain claims were dismissed as legally insufficient pursuant to 28 U.S.C. § 1915A(b). The claims which remain for resolution are Kirk's claims that his federally secured rights were violated on May 6, 2004, when the defendants came to the door of his apartment and forced entry without probable cause or consent, and that his arrest for domestic battery and other charges were subsequently dismissed.

The defendants seek resolution of these remaining claims through the entry of summary judgment. Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

"'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)). The court must "construe all facts in a light most favorable to . . . the party opposing summary judgment, and . . . draw all reasonable inferences in his favor." *McGreal v. Ostrov,* 368 F.3d 657, 672 (7th Cir. 2004) (citation omitted). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook,* 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith v. Severn,* 129 F.3d 419, 425 (7th Cir. 1997)). However, the non-moving party bears the burden of coming forward with specific facts from the record which show a genuine issue of material fact. *Morfin v. City of E. Chi.,* 349 F.3d 989, 997 (7th Cir. 2003) (citation omitted).

In this case, the evidentiary record has been fixed by the closing of the briefing period, which was September 5, 2007. To leave no doubt as to this, the court's Entry of September 10, 2007, informed the parties that:

> The plaintiff has failed to oppose the defendants' motion for summary judgment with evidentiary material and the deadline for him to have done so has expired. Accordingly, the factual assertions on which the motion for summary judgment is based and which are properly supported by the evidentiary record, are accepted as true for the purpose of resolving that motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This is the result of Local Rule 56.1(h), of which the plaintiff was notified. A separate ruling discussing the motion for summary judgment will be issued in the near future.

Kirk seeks relief from the foregoing determination through his motion for leave to file belated opposition to defendants' summary motion, filed on September 19, 2007, but the court concludes that this motion must be **denied** despite his incarceration and his pro se status in this action. The motion for summary judgment was filed on June 18, 2007. The presumptive period for a response by Kirk was extended, and extended twice more, through September 5, 2007 (a total of 75 days). As that deadline was reached, what Kirk showed in this case was not the inability to compile a legal document or produce materials pertinent to the case, and certainly not his incapacitation in any legal, literal or virtual sense, but a proposed amended complaint (submitted on September 6, 2007). This document was rejected as untimely, as well it should have been. The further consequence, it seems, is that by using his time to prepare the proposed amended complaint, rather than preparing a response to the motion for summary judgment, Kirk has forgone the opportunity to oppose the motion for summary judgment. His opportunity to have done so is not rendered less full or meaningful because he did not use it well, at least in relation to the motion which is addressed in this Entry. As noted in *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996):  "We live in a world of deadlines. . . . A good judge sets deadlines, and the judge

has a right to assume that deadlines will be honored. The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines." Materials submitted after the expiration of a deadline need not be considered. *Gonzalez v. Ingersoll Milling Machine Company,* 133 F.3d 1025, 1030 (7th Cir. 1998); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.,* 991 F.2d 1249, 1257 (7th Cir. 1993) ("[A] decision to disregard all materials submitted after a reasonable filing deadline is certainly not an abuse of discretion because it allows the district court to preserve the moving party's right to respond to the resisting party's argument and to decide the summary judgment motion in a timely fashion.") (citation omitted). Kirk's proposed opposition, moreover, consists of a sworn but conclusory statement that his claims are meritorious. This will not do, even if it had been timely submitted or even if the court reached a different conclusion regarding the appropriateness of permitting a belated response. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of a complaint or answer with conclusory allegations of an affidavit."). To repeat, therefore, the plaintiff's motion for leave to file belated opposition to defendants' summary judgment is **denied.**

### B.  Undisputed Material Facts

Kirk argues that the defendants forced their way inside his home without his consent. Kirk also argues that the defendants did not have a search warrant and that they did not have probable cause for Kirk's arrest.

The undisputed material facts, for purposes of resolving the defendants' motion for summary judgment, are the following:

The defendants were dispatched to Kirk's home in response to an emergency call from Kirk's neighbor regarding a domestic disturbance. When the defendants arrived at the scene, they heard screaming from inside Kirk's apartment. When the defendants asked Kirk to answer the door, he refused. Once Mary Jones opened the apartment door, however, the defendants observed scratches and bruising on Mary Jones' neck. Mary Jones told the defendants that Kirk grabbed her around the neck, threw her against the wall and caused the scratches. Those were the facts known to the defendants at the time of Kirk's arrest.

Upon entering Kirk's apartment, however, the defendants did not break down Kirk's apartment door. On the contrary, Mary Jones opened the door to the apartment to allow the defendants to enter the apartment.

In addition to the foregoing, and as a result of Kirk's failure to respond to requests for admissions properly served on him, Kirk has no evidence that the defendants violated his rights under the Fourth Amendment of the United States Constitution and likewise has no evidence that the defendants violated his rights under the Fourteenth Amendment of the United States Constitution.

3

## II. Applicable Law

Kirk's claims are asserted pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 112 S. Ct. 1827, 1830 (1992). Subject matter jurisdiction over the claims is conferred by 28 U.S.C. § 1331.

"Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

Kirk's first claim is that the defendants violated his rights under the Fourth Amendment of the United States Constitution by entering his home on May 6, 2004, when the defendants came to the door of his apartment and entered. This claim fails for several reasons.

- ♦ First, Kirk has admitted that he has no evidence to support this claim. This admission is fatal to the claim. *Lewis v. Holsum of Ft. Wayne, Inc.,* 278 F.3d 706, 709 (7th Cir. 2002)(on summary judgment, "a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial") (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). This fact is established through Kirk's requests for admissions served on him. *See, e.g., Kohler v. Leslie Hindman, Inc.,* 80 F.3d 1181, 1185 (7th Cir. 1996) ("When a party in a lawsuit makes an admission in its pleadings or in its answer to a request for admissions, it makes a judicial admission that can determine the outcome of that lawsuit." (citing Fed.R.Civ.P. 36(b))); *Keller v. United States,* 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal . . . . [They] have the effect of withdrawing a fact from contention." (quotations omitted)).

- ♦ Beyond this, the defendants' entry into the apartment was not unjustified under Fourth Amendment standards. While the general rule is that warrantless entry into a home to conduct a search is presumptively unreasonable under the Fourth Amendment, "a well settled exception to this general rule permits authorities to conduct a search without a warrant if they obtain voluntary consent either from the individual whose property is to be searched . . . ." *United States v. Saadeh,* 61 F.3d 510, 517 (7th Cir. 1995) (citing cases). In this case, the defendants were dispatched to the address in response to a 911 call of a domestic disturbance. They

      knocked on the door and announced their presence. They saw injuries (scratches and swelling) on Mary Jones' neck when Jones opened the door to speak with them. Jones opened the apartment door and permitted the defendants to enter. The defendants' entry into the apartment was not forced, as Kirk alleges, but was consented to by Ms. Jones, who had answered their knocks on the door. By permitting the defendants to enter the apartment, Jones gave consent to that entry and this consent defeats any claim against them under the Fourth Amendment. *United States v. Hayward,* 471 F.2d 388, 389-90 (7th Cir. 1972).

♦      Finally, and apart from Ms. Jones' consent, the injuries to her which were observed by the defendants and their observation, in the circumstances they encountered, constituted exigent circumstances justifying their warrantless entry into the apartment. *United States v. Brooks,* 367 F.3d 1128, 1136 (9th Cir. 2004)(the "Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person is in need of immediate aid")(collecting cases); *United States v. Lawrence,* 236 F.Supp.2d 953, 963 (D.Neb. 2002) ("Even when the possible victim of domestic abuse assures the officer that she is in no danger, an officer is entitled to consider all the facts and is not required to take her statement at face value in assessing the potential threat of physical harm.").

With respect to the claim that the defendants' entry into Kirk's apartment was unlawful, it need only be recalled that the Fourth Amendment requires the scope of a warrantless entry to be reasonable, considering the governmental interest, privacy expectations, the nature of the intrusion, and to some extent the manner of the search. *Green v. Berge,* 354 F.3d 675, 678 (7th Cir. 2004). Nothing in the evidentiary record suggests that the defendants exceeded these boundaries, and as noted Kirk has no evidence showing otherwise.

      Kirk's second claim is that the defendants violated his rights by arresting him without a warrant. As relevant above as well, the Fourth Amendment protects against unreasonable searches and seizures. "Reasonableness" under the Fourth Amendment, and thus, the constitutionality of a warrantless arrest, requires the existence of probable cause to make an arrest. "A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim." *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir. 1990). Conversely, police may make warrantless arrests based on probable cause. *United States v. Watson,* 423 U.S. 411, 418 (1976).

      "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford,* 125 S. Ct. 588, 593 (2004) (citations omitted). A law enforcement officer has probable cause to arrest a suspect "when the totality of the facts and circumstances within his knowledge and of which he has reasonably trustworthy information is sufficient to warrant a prudent person in believing the suspect committed or was committing an

offense." *Marshall v. Teske,* 284 F.3d 765, 770 (7th Cir. 2002). "Determinations of probable cause are naturally based on probabilities, and a finding of probable cause 'does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.'" *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (quoting *United States v. Carrillo,* 269 F.3d 761, 766 (7th Cir. 2001)).

Under Indiana law, a police officer may arrest a person when the officer has probable cause to believe that the person is committing or attempting to commit a felony, a domestic battery, or, in the officer's presence, a misdemeanor. IND. CODE § 35-33-1-1(a). That is what the defendants reasonably believed when they knocked on the door of Kirk's apartment, when Ms. Jones opened that door and when they saw the injuries to her.

The pertinent question for resolution at this point is not whether Kirk had committed a battery against Ms. Jones, but whether the defendants had reasonable grounds for believing that he had done so. *See Washington v. Haupert,* 481 F.3d 543 (7th Cir. 2007) (noting, in a case alleging an arrest for domestic battery without probable cause, of the need to show that officers unreasonably believed a battery had been committed). "In order to survive summary judgment, the plaintiffs first must present evidence which would allow a reasonable fact finder to determine that they were arrested without probable cause." *Id.* at 547 (citing *Booker v. Ward,* 94 F.3d 1052, 1057 (7th Cir. 1996)). Kirk has not presented such evidence, and the evidence of record demonstrates just the contrary. Accordingly, there was probable cause for Kirk's arrest for domestic battery on May 6, 2004. The existence of probable cause defeats Kirk's claim of a Fourth Amendment violation based on his warrantless arrest.

Kirk presents additional, but entirely indistinct, claims, by making reference to the Fourteenth Amendment's guarantee of due process and equal protection. Although due process certainly provides essential protections to the maintenance of liberty and vindication of wrongful conduct by state actors in a multitude of circumstances, none of those are presented here. The same is true of the guarantee of equal protection of the laws. The Supreme Court has mandated that "[w]hen a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (internal quotation marks omitted); *see Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) ("[C]onstitutional claims must be addressed under the most applicable provision."). Kirk's due process reference is inapt to his allegations and does not support a viable claim for relief. *See Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007)(a complaint must plead "enough facts to state a claim to relief that is plausible on its face").  His allegations invoke the protections of the Fourth Amendment, and that is the constitutional provision which has provided the standard for determining whether there is a basis for trial. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983)("It [would be] a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained.").

### III. Conclusion

The defendants have met their burden on summary judgment by showing that there was no violation of the Fourth Amendment through their entry into Kirk's apartment or their warrantless arrest of him. These determinations are fatal to Kirk's claim against them, see *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992) (without a predicate constitutional violation one cannot make out a *prima facie* case under § 1983), and this conclusion makes it unnecessary to address the defendants' discussion of the second prong of their qualified immunity argument. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). *Saucier,* 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

The defendants' motion for summary judgment is therefore **granted,** and judgment consistent with this Entry shall now issue. The document styled "subpoena" filed by Kirk on September 26, 2007, is of **no effect.** The costs of this action are assessed against the plaintiff, Carl H. Kirk.

**IT IS SO ORDERED.**

Date: 09/28/2007

*[Signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana